STATE of Iowa, Appellee,

v.

**Ricky Lee WEAVER, Appellant.**

No. 98–1214.

Supreme Court of Iowa.

March 22, 2000.

Gaylen V. Hassman of Engelbrecht, Ackerman & Hassman, Waverly, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik and Charles N. Thoman, Assistant Attorneys General, and Mark R. Cozine, County Attorney, for appellee.

LARSON, Justice.

Ricky Lee Weaver was convicted of second-degree sexual abuse. *See* Iowa Code §§ 709.1(3), 709.3(2) (1997). The conviction was reversed by the court of appeals, and we granted the State's application for further review. We vacate the court of appeals decision and affirm the judgment of the district court.

## I. *Facts.*

Ramona Weaver's daughter, Kendra, was the alleged victim of sexual abuse. This defendant, charged with the abuse, was married to Kendra's mother, but he is not the father of Kendra. The victim was born in December 1992. Ramona and the defendant are the parents of Kendra's half-sister, J.W., who was born in 1996. Weaver, Ramona, and the two daughters lived together in a modular home near Cherokee. The court found the following facts surrounding the event.

When Ramona returned home from work on Friday, May 16, 1997, Weaver was there with the girls, whom he had brought

home from their baby-sitter. Ramona took the girls four-wheeling in the country, followed by an outing in a pizza restaurant. Ramona testified that the victim appeared to be normal at that time; any pelvic injury would be readily apparent, according to her. Ramona put the girls to bed at 9 p.m. When she put Kendra to bed, she did not see anything unusual about her and specifically saw no vaginal bleeding. Weaver returned home at 10 or 11 p.m.

The next day Ramona got up about 6 or 6:30 a.m. and left for work. The defendant was left with the girls. Ramona came home from work about 3 p.m. When she came home, her half-sister, Sheila, Sheila's husband, and Sheila's daughter were at the trailer with Weaver and Ramona's two daughters, including Kendra. Sheila and her family, who had been there since about 2 or 2:30 p.m. left soon after Ramona came home. About 4:30 p.m., Weaver told Ramona that Kendra had been bleeding from the vaginal area but said he had done nothing to cause it. He left immediately for his parents' farm.

Ramona observed vaginal bleeding and blood on Kendra's underpants. She changed Kendra's clothes and went to look for Weaver. When she found him, she asked him what had happened, and he said he did not know. When Weaver came home, he and Ramona took Kendra to a hospital in Cherokee, then to a hospital in Sioux City. A sexual assault evidence collection kit revealed Kendra had been the victim of sexual abuse. DNA tests were done on Weaver and the victim.

Dr. Michael Jung, medical director of the Marian Health Center's child protection center, had been involved in at least 800 cases of sexual abuse evaluations. He examined Kendra in the Sioux City hospital and observed fresh blood in Kendra's genital area, with continued bleeding. His examination revealed a complete tear through the hymen to the muscle that closes the sphincter. The tear was over an inch long and required sutures to repair. Dr. Jung testified that in his opinion the

tear was caused by a penetrating object large enough to cause the tear. He testified the object would have been at least two fingers or an erect adult penis. In his opinion, the injury was fresh, occurring within the previous twenty-four hours.

Weaver was arrested and examined by a doctor. Blood samples and penile swabs were obtained. Pursuant to a warrant, officers searched Weaver's home, and Weaver's underpants were obtained from the county jail where he was in custody. Blood stains were found on Weaver's sweatpants and underwear. Blood stains were also found on the swab of Weaver's penis.

Kendra's DNA was found on the sweatpants but swabs of Weaver's penis and Kendra's underwear were not sufficient to identify the DNA on them. The doctor's visual examination of Weaver revealed no sign of injuries that could have caused his own bleeding.

Weaver was charged with second-degree sexual abuse. He waived his right to a jury trial, and the case was tried to the court. The court, in a detailed ruling, found the State had proven the elements of the offense beyond a reasonable doubt.

Weaver attacks his conviction on seven grounds: (1) the court's denial of his application to depose the victim, (2) sufficiency of the evidence to support the conviction, (3) admission of out-of-court statements by the victim's mother, (4) admission of statements by the defendant, (5) admission of testimony by a sheriff's deputy explaining why he had not taken fingernail scrapings from the defendant, (6) admission of "verbal and nonverbal" statements of the victim, and (7) admission of DNA evidence.

## II. *The Deposition Issue.*

The court denied Weaver's pretrial application to take the deposition of the victim. His application for authority to take the deposition is unclear as to the basis for it; it simply stated:

3. There is an additional witness who is not listed in the minutes that pos-

sess[es] evidence both material and favorable to the defendant which is not merely cumulative.

. . . .

6. The information sought by way of deposition cannot adequately be obtained by a bill of particulars or voluntary statements due to the fact that [the] witness's credibility is a major factor in the preparation of defense of this case.

7. It would be in the interest of justice considering the special circumstances herein for the witness to be deposed by the defendant.

The statement in paragraph three of the application (that the proposed deponent was not listed as a witness in the minutes of testimony) suggests Weaver was relying on Iowa Rule of Criminal Procedure 12(2) under which a court may authorize the deposition of witnesses not listed in the minutes under "special circumstances." However, Weaver does not expressly state in his application that rule 12 is the basis for his application. Nor does he mention any of the specific constitutional claims he now asserts. His attorney merely alluded to the United States Constitution in his oral argument in support of his application. Although we have serious reservations about Weaver's preservation of most of the arguments he now presents, we address the merits of his four assignments of error based on the court's refusal to order pretrial discovery of the victim.

Weaver challenges the court's refusal to allow pretrial discovery on four bases: (1) Iowa Rule of Criminal Procedure 12, (2) the Compulsory Process Clause, (3) the Confrontation Clause of the Sixth Amendment to the United States Constitution, and (4) the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

■ A. *Iowa Rule of Criminal Procedure 12.* Iowa Rule of Criminal Procedure 12 allows for a criminal defendant to take the depositions of certain individuals.

Subsection 1 provides a defendant the right to depose "all witnesses listed by the state on the indictment or information." This proposed deponent, the victim, was not listed in the minutes of testimony, so rule 12(1) is inapplicable. Subsection 2 of rule 12 provides for depositions of witnesses not listed in the minutes. Rule 12(2) provides:

a. Whenever the interests of justice and the special circumstances of a case make necessary the taking of the testimony of a prospective witness not included in subsection 1 or 3 of this rule, for use at trial, the court may upon motion of a party and notice to the other parties order that the testimony of the witness be taken by deposition and that any designated book, paper, document, record, recording, or other material, not privileged, be produced at the same time and place. For purposes of this subsection, special circumstances shall be deemed to exist and the court shall order that depositions be taken only upon a showing of necessity arising from either of the following:

(1) The information sought by way of deposition cannot adequately be obtained by a bill of particulars or voluntary statements.

(2) Other just cause necessitating the taking of the deposition.

Subsection 2 is inapplicable in this case because the rule itself makes it clear it is to be used to perpetuate testimony, not for discovery as Weaver sought to use it. Rule 12(2) allows testimony of a witness "not included in subsection 1 [a witness listed in minutes] or 3 [disclosure of defense witnesses] of this rule, *for use at trial* . . . ." (Emphasis added.)

In discussing rule 12(2), we have also said:

To trigger the right of compulsory process, a defendant must make a plausible showing the testimony of the individual *otherwise unavailable* to the defendant was both material and favorable to his

defense. This requirement is embodied in Iowa Rule of Criminal Procedure 12, which, although allowing a defendant to depose all witnesses listed by the State on its trial information, requires a defendant to establish the necessity for deposing other persons.

*State v. Wagner*, 410 N.W.2d 207, 213 (Iowa 1987) (citation omitted) (emphasis added).

In this case, the defendant did not claim the victim was unavailable to testify, and his general statement in his application for discovery that "the interest of justice" requires an order for deposition is insufficient to justify a discovery order under rule 12.

B. *The Sixth Amendment issues.* Weaver's attorney alluded to his client's Sixth Amendment rights at the hearing on his application for discovery, although it was not a part of his application. Assuming the issues were adequately raised, we proceed to discuss them.

1. *Compulsory process.* The United States Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor ....

U.S. Const. amend. VI.

*Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), discussed the scope of the Compulsory Process Clause.

The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact. The right to offer testimony is thus grounded in the Sixth Amendment even though it is not expressly described in so many words:

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's ver-

sion of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019[, 1023] (1967).

The right of the defendant to present evidence "stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States." *Id.* at 18, 87 S.Ct. at 1923[, 18 L.Ed.2d at 1022–23].

*Taylor*, 484 U.S. at 409, 108 S.Ct. at 653, 98 L.Ed.2d at 810–11.

Whether the Compulsory Process Clause guarantees the right to pretrial discovery is not clear. In *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S.Ct. 989, 1000–01, 94 L.Ed.2d 40, 56 (1987), the Supreme Court said it had "never squarely held that the Compulsory Process Clause guarantees the right to discover[y]," and it declined to decide the issue in that case. Rather, it noted such issues were ordinarily evaluated under the broader scope of the Due Process Clause of the Fourteenth Amendment and elected to resolve the issue under a due-process analysis. *Ritchie*, 480 U.S. at 56, 107 S.Ct. at 1001, 94 L.Ed.2d at 57.

Because Weaver also raises a due-process argument, we do not resolve his claim under the compulsory-process provision of the Constitution. We discuss the due-process claim in a later division.

2. *The Confrontation Clause.* The United States Constitution provides that:

In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ....

U.S. Const. amend. VI; *see also* Iowa Const. art. I, § 10.

This defendant alludes to his right of confrontation but provides no authority to support an argument he was deprived of that right here. In fact, in *State v. Froning*, 328 N.W.2d 333 (Iowa 1982), we rejected the argument now made, saying:

> "The Confrontation Clause does not provide the defendant with any right to pre-trial or in-trial *discovery* of the state's evidence. The purpose of the Confrontation Clause is to provide the defendant with the opportunity to challenge the testimony introduced by the state against the accused at trial by means of cross-examination of the declarant of the testimony.... The petitioner has not cited, and *this court has not discovered anything in the English or American history of the Confrontation Clause, or in any decision of the Supreme Court interpreting that clause, which suggests in the slightest that the Confrontation Clause is in any way concerned with discovery.* Accepting the petitioner's argument would transform the Confrontation Clause from a device designed to prevent trial by affidavit into a guarantee of the right to demand trial by affidavit."

*Id.* at 336–37 (quoting *Martin v. Blackburn*, 521 F.Supp. 685, 699 (E.D.La.1981)).

For the reasons discussed in *Froning*, we reject the defendant's confrontation-clause argument.

3. *The due-process claim.* We have held the right to present a defense is so fundamental and essential to a fair trial that it is accorded the status of an incorporated right through the Fourteenth Amendment's Due Process Clause. *Osborn v. State*, 573 N.W.2d 917, 921 (Iowa 1998).

Here, the defendant's due-process argument is very brief. He merely says he "has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." He submits no authority to support the argument he was denied due process.

We have said:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.* at 921 (quoting *Washington*, 388 U.S. at 19, 87 S.Ct. at 1923, 18 L.Ed.2d at 1023).

Here, the defendant was not denied the right to present a defense. He was only denied the opportunity to present a defense that suited his own strategy under which he did not even attempt to call the victim as a witness at trial. We reject his due-process argument.

### III. *Sufficiency of the Evidence.*

Weaver contends the evidence was insufficient to support the conviction. We review a trial court's findings in a jury-waived case as we would a jury verdict: If the verdict is supported by substantial evidence, we will affirm. *State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993).

In this case, the elements of second-degree sexual abuse are the defendant's (1) commission of a sex act (2) against a child under twelve. Iowa Code §§ 709.1(3), 709.3(2). A "sex act" means sexual contact including contact between the genitalia of one person and the genitalia or anus of another or contact between the finger or hand of one person and the genitalia or anus of another. Iowa Code § 702.17.

Weaver does not seriously challenge the State's proof that a sex act was committed. His focus is on the State's

proof regarding the identity of the perpetrator. He strongly attacks the credibility of his wife, Ramona, the victim's mother. He contends her testimony "is improbable, her actions absurd, and her claims about the [defendant's blood-stained] sweatpants impossible." The district court, however, had a different view of her credibility, making an express finding that "[t]he court finds Ramona Weaver to be a very credible person." Determinations of credibility are in most instances left for the trier of fact, who is in a better position to evaluate it. *State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986). We defer to the court's assessment of credibility here; there is substantial evidence to support the court's finding.

In addition, the guilt of the defendant was strongly supported by the physical evidence on which the court relied. Blood stains were found on the defendant's underwear. Blood stains were found on the front crotch area and back leg area of the defendant's sweatpants. The blood stains on the sweatpants contained the victim's DNA. Swabs of the defendant's penis revealed blood stains, and according to the doctor's examination, this was not the defendant's blood. We conclude the verdict was supported by substantial evidence.

## IV. *The Evidence Rulings.*

Weaver claims error in the court's admitting (1) a statement by the victim's mother concerning her belief that Weaver had committed the sexual abuse; (2) testimony by the victim's aunt, Michelle Weaver, about a statement made to her by Weaver; (3) "verbal and nonverbal" evidence by the victim; (4) testimony by an officer as to why he had not taken fingernail scrapings of the defendant; and (5) the DNA evidence. The State responds that, as to some of the assignments of error, the defendant had failed to preserve error; and there is no merit to any of the objections in any event. Also, because this was a trial to the court, the rules of evidence are less stringent. *See State v.*

*Farnum*, 397 N.W.2d 744, 746 (Iowa 1986) (while rules of evidence are applicable both to bench and jury trials, there is less need for strict application of evidence rules in a bench trial). (There is no suggestion in the court's ruling that it relied on any of the disputed evidence except that concerning DNA.)

■ A. *The mother's testimony.* Ramona Weaver testified on direct examination that she believed Weaver had committed the assault on Kendra. Weaver objected on relevancy grounds, but the State argued the testimony was proper to meet the defendant's expected attempt to show bias (the possible use of the sexual abuse matter by Ramona to gain an advantage for her in her pending dissolution action against Weaver). The State argues it merely had attempted to preempt any testimony by the defendant on cross-examination as to the possible bias of the witness. The court was within its discretion in allowing this evidence.

■ B. *The aunt's testimony.* Sheila Weaver, the victim's aunt, was called as a witness on behalf of the defendant. On the State's cross-examination of her, she was asked if the defendant had made a statement to her about the event. Weaver objected that the statement was hearsay, a denial of his right of confrontation, and beyond the scope of direct examination.

Q. [MR. THOMAN (Prosecutor):] Do you remember what he said to you when he did that? He came around and sat down next to you and said, "Kendra's saying I put my fingers in her. I didn't do it."

MR. MCCULLOUGH [Defense Counsel]: That's objected to as not only hearsay but going beyond the scope of direct examination.

MR. THOMAN: Your Honor, it's not hearsay, it's a statement by a party opponent, and I'm asking this witness about it. It's not hearsay if the defendant said it. Furthermore, this is still within the general framework. She

talked with the defendant once. This is still within the area of cross-examination.

THE COURT: Well, it's not hearsay. My concern is going beyond the scope of direct. I'm going to allow the question.

MR. THOMAN: Do you remember that one? Okay. Let me ask—when he sat down next to you, "Kendra is saying that I put my fingers in her and I didn't."

THE WITNESS: Okay.

Q. He said that to You? A. Yes.

We agree with the district court that Weaver's statement was an admission because it tended to show he was aware of how the crime had been committed. It was therefore properly received by the court. As to the defendant's confrontation clause argument, he failed to raise the issue at trial and has therefore waived it on appeal. As to the defendant's argument the cross-examination exceeded the scope of direct examination, we give considerable discretion to the trial court in ruling on such matters, and that discretion was not abused here.

C. *The victim's "statements."* One witness who had been present at the hospital testified (1) the victim appeared to be happy to find out her mother was at the hospital, (2) the victim wondered where her younger sister was, and (3) she was upset that Weaver might be present at the hospital.

 To be hearsay, an out-of-court utterance must be a "statement." Iowa R. Evid. 801(c). A statement is defined as an oral or written assertion or conduct intended to be an assertion. Iowa R. Evid. 801(a).

A great many out-of-court utterances fall within such categories as greetings, pleasantries, expressions of gratitude, courtesies, *questions,* offers, instructions, warnings, exclamations, expressions of joy, annoyance, or other emotion, etc. Such utterances are not intentional expressions of facts or opinions. They are not assertions, at least for purposes of the hearsay rule. Thus they are not hearsay.

*State v. Rawlings,* 402 N.W.2d 406, 409 (Iowa 1987) (quoting Binder, *Hearsay Handbook* 15 (2d ed.1983)) (emphasis added). In this case the victim's inquiry about her sister was not hearsay because it was not an assertion. The same is true as to her appearance of excitement about her mother being at the hospital; because her appearance of happiness was not an assertion for hearsay purposes, it was properly admitted.

 Weaver also claims error in the admission of evidence that the victim appeared to be upset about Weaver possibly being at the hospital. It is not clear whether the witness discerned this uneasiness from something the victim said or by her actions. If the latter, it was not a statement for hearsay purposes because it was not an assertion. If the witness concluded the victim was upset about Weaver's presence because of something the victim said, it would clearly be admissible as an excited utterance under Iowa Rule of Evidence 803(2). The district court did not elaborate on its reasons for overruling the hearsay objection. However,

we will affirm a ruling which admits evidence over a hearsay objection on any proper ground appearing in the record, even if it was not raised below.

*Rawlings,* 402 N.W.2d at 409. We reject this assignment of error.

 Another witness testified that the victim lifted the dress on her younger sister and appeared to examine her pelvic area. The defendant objected on hearsay grounds, arguing this suggested the victim was reenacting an act by the defendant. The district court overruled the objection, presumably because the child's nonverbal action in lifting the dress was not intended to be an assertion under Iowa Rule of Evidence 801(a). In any event, even if the act were an assertion for hearsay purposes, its admission was harmless; it is

clear from the court's findings in this jury-waived trial that it did not rely on this evidence. *See Farnum,* 397 N.W.2d at 746 (rules of evidence less stringently applied in jury-waived trial).

 D. *The officer's testimony about why he had not taken fingernail scrapings from the defendant.* On rebuttal, the State called officer Stubbe and inquired why he did not take fingernail scrapings from Weaver. This witness testified, over relevancy and materiality objections, that he did not do so because he initially had no knowledge that there would have been any evidence in the fingernail area of Weaver's hands.

 Rebuttal evidence is evidence that explains, repels, controverts, or disproves evidence produced by the opposing party. *Carolan v. Hill,* 553 N.W.2d 882, 889 (Iowa 1996). The trial court has considerable discretion in admitting rebuttal evidence, including the discretion to include evidence that could have been offered as a part of the case in chief. We will only disturb such a ruling on a showing of clear abuse of discretion. *Id.* The rebuttal evidence was properly allowed.

On the defendant's cross-examination of an Iowa Division of Criminal Investigation agent, the agent testified that he analyzed no fingernail scrapings from Weaver. Officer Stubbe's testimony was offered to rebut the defendant's implication that the State had failed to preserve important evidence, and this rebuttal evidence was therefore clearly relevant.

 E. *The DNA evidence.* Weaver's last assignment of error concerns the court's admission of DNA evidence. While Weaver had filed a pretrial motion to suppress and a motion in limine regarding the evidence, at trial his counsel stated he had no objection to the DNA testimony. He objected only to the admission of the physical exhibits. Under these circumstances, we have held any objection raised in pretrial motions is waived. *See State v. Terry,* 569 N.W.2d 364, 369 (Iowa 1997). We

reject his argument the DNA testimony was erroneously received.

We find no merit in any of the defendant's assignments of error and therefore vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except CARTER, J., who takes no part.