# IN THE COURT OF APPEALS OF IOWA

―――――――――

No. 24-1550
Filed April 15, 2026

―――――――――

**State of Iowa,**
Plaintiff–Appellee,
v.
**Verne David Miller Jr.,**
Defendant–Appellant.

―――――――――

Appeal from the Iowa District Court for Dubuque County,
The Honorable Mark T. Hostager, Judge.

―――――――――

**AFFIRMED**

―――――――――

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney
General, attorneys for appellee.

―――――――――

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Badding, J.

1

**BADDING, Judge.**

On a summer evening in July 2022, Verne Miller Jr. slammed his date's head into the bed of his truck three times, leaving her with a concussion and a black eye. A jury rejected Miller's justification defense and found him guilty of assault causing bodily injury. Miller appeals, challenging the sufficiency of the evidence, the district court's admission of rebuttal evidence, and his sentence. We affirm.

## I.    Background Facts and Proceedings

Miller began dating J.H. in February 2021. They enjoyed taking walks together, going for motorcycle rides, and stopping at Miller's favorite bars. On one of those outings in July 2022, Miller assaulted J.H.

The couple described the beginning of the evening similarly. After J.H. finished work, Miller picked her up from a local bar—Yardarm Bar and Grill—on his motorcycle. They went out to eat and met some friends at another bar. When they left that bar, they exchanged Miller's motorcycle for his truck and went back to Yardarm to listen to a band. Miller and J.H. then drove to a nearby campground. Miller parked in a secluded spot, and the two had sex in the bed of his truck. From there, their accounts of the evening diverge.

J.H. recalled getting out of the truck to go to the bathroom. While squatting next to the truck, she checked her phone to see if her children had contacted her. Miller noticed this and got angry, accusing her of "sexting other men." Thinking she could defuse the argument, J.H. climbed back into the truck bed. As she was crawling in, J.H. testified that Miller grabbed the back of her hair and slammed her head against the bed of the truck three times. J.H. later told police that she fought back and split Miller's lip. She

testified that after the "second hit everything went white." When she sat up, J.H. felt "an instant knot on [her] head," and Miller said, "Oh, shit." She told Miller to take her back to her car, and he did—all while apologizing and asking whether she was going to call the police. Once she was safely in her car, J.H. did just that. She went to the hospital the next day and was diagnosed with a concussion. For about three weeks after the assault, J.H. had a black eye.

Miller remembered the evening differently. He testified that after J.H. got out of the truck to go to the bathroom, she asked him for some toilet paper. He unlocked the truck and—after some time passed—J.H. got back into the bed of the truck, mad because he didn't give her the toilet paper. He said that J.H. started pushing him and calling him names as he was trying to sit up. He pushed her away and started trying to get his shorts on. Then Miller said that J.H. swung at him "a couple times," hitting him in the mouth. While she was "still flailing" at him, Miller testified that he "grabbed her wrist, and she grabbed [his] hand and bit it." He shoved her again and jumped out of the truck. As he finished pulling his shorts up, Miller testified that he saw J.H. "leaning on the side of the truck" and that she told him, "I hit my fucking head."

The State charged Miller with assault causing bodily injury, a serious misdemeanor, in violation of Iowa Code section 708.2(2) (2022). At trial, the district court granted the State's request to admit rebuttal evidence consisting of Miller's testimony from a prior case. The jury found Miller guilty, and the court sentenced him to 365 days in jail, with all but 185 days suspended, and probation.

Miller appeals, challenging the sufficiency of the evidence supporting the jury's verdict and the admission of the State's rebuttal evidence. He also claims the district court abused its discretion in sentencing him to jail.

## II. Analysis

### A. Sufficiency of the Evidence

We review Miller's challenge to the sufficiency of the evidence for the correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022).

> In conducting that review, we are highly deferential to the jury's verdict. The jury's verdict binds this court if the verdict is supported by substantial evidence. Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.

*Id.* (cleaned up).

Miller claims that the jury's verdict lacks sufficient evidence because he acted in self-defense. *See State v. Fordyce*, 940 N.W.2d 419, 426 (Iowa 2020) ("When self-defense is raised, the burden rests with the State to prove beyond a reasonable doubt that the justification did not exist."). Casting J.H. as the aggressor, Miller argues that he "was justified in using reasonable force, as he reasonably believed such force was necessary to defend himself from [J.H.'s] assaultive behavior." *See* Iowa Code § 704.3.

We reject Miller's argument, as it would require us to adopt his version of events over J.H.'s conflicting account. "It is not our place to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to

determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) (cleaned up). When the evidence is viewed in the light most favorable to the State, a reasonable fact finder could conclude that Miller's actions were not justified based on J.H.'s testimony and photographs of her injuries. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) (stating that "the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt").

While Miller had an alternative explanation for how J.H. was injured, the jury was not required to believe his testimony. *See State v. Jones*, 967 N.W.2d 336, 343 (Iowa 2021) (explaining a jury is "not required to accept the defendant's version of the events" (citation omitted)); *Brimmer*, 983 N.W.2d at 256 (stating it is "for the jury to decide which evidence to accept or reject"). As we recently said in rejecting a similar sufficiency argument, "[a] criminal defendant is not entitled to acquittal merely because he wishes the jury had believed him instead of the victim." *State v. Hernandez*, 20 N.W.3d 502, 507–08 (Iowa Ct. App. 2025). Substantial evidence supports the jury's verdict finding Miller guilty of assault causing bodily injury.

## B.    Rebuttal Evidence

During the State's cross-examination of Miller, the prosecutor confronted him with two inconsistencies between his testimony at this trial and his testimony in a prior case.

The first was about what Miller drank at Yardarm. At the previous trial, Miller testified that he only had water: "I was drinking water, and she had a couple drinks." But in this case, Miller testified that he had one drink at Yardarm before he started drinking water. When asked about that

inconsistency, Miller testified: "I said I was drinking water. Sorry. I forgot one beer." The second inconsistency was whether J.H. pushed Miller before she punched him. In his previous testimony, Miller said that when J.H. got back into the truck bed, "she proceeded to call me a lazy, fat fucker, several times, and cursed me out and then had proceeded to punch me in the mouth twice." In this case, however, Miller testified that J.H. pushed him before she started swinging at his mouth. Acknowledging the difference, Miller explained: "I mean, it's been almost two years; so it's kind of a gray area."

After the defense rested, the State offered three pages of Miller's testimony from his prior trial as an exhibit. The pages covered the same portions that the prosecutor read to Miller while cross-examining him. Defense counsel objected, arguing: "I don't know how it qualifies as rebuttal." The prosecutor responded that he was seeking to rebut Miller's testimony about his "alcohol consumption and the . . . series of events that happen[ed] during the assault." The court overruled Miller's objection, finding the evidence was "admissible as an admission by a party opponent" and qualified as rebuttal evidence. However, the court denied the State's request to admit the transcript pages as an exhibit, directing the prosecutor to instead read them into the record.

On appeal,[1] Miller focuses his challenge on the district court's decision to allow the State to read the transcript pages into evidence. He does not, however, contest the underlying admissibility of the evidence. *See* Iowa R. Evid. 5.801(d)(2) (excluding an opposing party's statement from the definition of hearsay); *State v. Shogren*, No. 23-2085, 2025 WL 1704077, at *3 (Iowa Ct. App. June 18, 2025) (noting that "in a criminal case, the State

---

[1] We elect to bypass the State's error preservation argument and affirm on the merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999).

can always offer statements made by a defendant" under rule 5.801(d)(2)). Nor does he contend that it failed to rebut his contrary testimony. *See State v. Weaver*, 608 N.W.2d 797, 806 (Iowa 2000) ("Rebuttal evidence is evidence that explains, repels, controverts, or disproves evidence produced by the opposing party."). Instead, he argues "the prior testimony amounted to nothing more than cumulative evidence, merely reinforcing what had already been elicited during cross-examination." And because the evidence was cumulative, Miller contends it was "not proper rebuttal evidence."

Miller is correct that in *Carolan v. Hill*, our supreme court explained:

> Rebuttal is not intended to give a party an opportunity to tell his or her story twice or to present evidence that was proper in the case in chief. Thus, rebuttal should not be used as a corroboration, reiteration, or repetition of the plaintiff's case in chief. Thus, evidence which is merely cumulative, adding nothing further to the position taken by previous witnesses, which merely bolsters or supplements that already adduced by the plaintiff, is not admissible as rebuttal.

553 N.W.2d 882, 889 (Iowa 1996) (cleaned up). But the court has also recognized that "[e]vidence is not inadmissible simply because it is cumulative, and the admission of such evidence rests largely in the discretion of the trial court." *State v. Maxwell*, 222 N.W.2d 432, 435 (Iowa 1974). The same discretion applies to the admission of rebuttal evidence. *Weaver*, 608 N.W.2d at 806. Indeed, we will not disturb the court's "considerable discretion in admitting rebuttal evidence" unless there has been "a showing of clear abuse of discretion." *Id.*

Other than arguing that the evidence was cumulative, Miller has not explained how the court abused its discretion in allowing the State to read the transcript pages into evidence on rebuttal. *See State v. Munz*, 355 N.W.2d 576, 580 (Iowa 1984) ("Even if we assume the evidence was cumulative, that

is not a sufficient reason, standing alone, to require its exclusion; its admissibility still turns on the trial court's discretion."). Miller has cited no cases—and we are unaware of any—reversing a ruling that allowed rebuttal evidence simply because it was cumulative to other evidence. *Cf. Carolan*, 553 N.W.2d at 889–90 (affirming the trial court's decision to exclude cumulative rebuttal evidence). In any event, even if we found the court abused its discretion in admitting the evidence, we agree with the State that any error was harmless.

"A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party. . . ." Iowa R. Evid. 5.103(a). Under this rule, "error in an evidentiary ruling that is harmless may not be a basis for relief on appeal." *State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008).

> We presume prejudice under this approach, unless the contrary is affirmatively established. When a nonconstitutional error is claimed, as in this case, the test is whether the rights of the objecting party have been injuriously affected by the error or whether the party has suffered a miscarriage of justice.

*Id.* (cleaned up). Neither is present here.

The two discrepancies highlighted by the State's rebuttal evidence were minor, especially considering that the rest of Miller's testimony at the two trials was mostly consistent. *See State v. McCullough*, 226 N.W.2d 216, 217 (Iowa 1975) (finding rebuttal evidence not "important enough to warrant reversal"); *State v. Hall*, 235 N.W.2d 702, 723 (Iowa 1975) (concluding that while the trial court should have rejected a witness's testimony "as not being rebuttal, the decision permitting him to testify was without prejudice" where it did not address a material issue). The inconsistencies were also similar to statements that Miller made to the police when he was interviewed about the

assault. In its rebuttal, the State played a recording of that interview for the jury, during which Miller told an officer investigating the incident that he "didn't drink much" the night of the assault. He also told the officer that when J.H. got back into the truck bed, she called him "a lazy piece of shit and started shoving" him. Miller did not object to the admission of that recording. We have also considered that Miller addressed the inconsistencies during his cross-examination, which we think lessens any prejudicial impact of the rebuttal evidence. In the overall context of the trial, we cannot say that Miller was injuriously affected by the rebuttal evidence or that he suffered a miscarriage of justice.

### C. Sentencing

Miller's final claim challenges the jail sentence imposed by the district court. "A sentencing court's decision to impose a specific sentence that falls within the statutory limits," as was the case here, "is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters." *State v. Damme*, 944 N.W.2d 98, 105–06 (Iowa 2020) (citation omitted). Miller argues the court abused its discretion by improperly considering his lack of remorse and basing its "remaining sentencing decision . . . primarily on one sentencing factor." Neither argument is supported by the record.

First, a defendant's lack of remorse is a proper sentencing consideration.[2] *See State v. West Vangen*, 975 N.W.2d 344, 355 (Iowa 2022).

---

[2] Miller asked the Iowa Supreme Court to retain this case and overturn its caselaw on the use of a defendant's lack of remorse in sentencing. Because the court transferred the appeal to us, we are bound by this controlling precedent. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent.").

It is "highly pertinent" to evaluating the defendant's "need for rehabilitation" and "likelihood of reoffending." *Id.* "Therefore, a court may consider that factor as evidenced by facts other than the defendant's not-guilty plea." *Id.* (cleaned up). That is exactly what the court did here.

At the sentencing hearing, the district court explained it did not hear remorse for the victim or her injuries, but rather remorse for Miller's own circumstances and the impact on his family:

> And I appreciate what you've told me when you spoke, but I really didn't hear a lot of remorse. I mean, I heard remorse, but it was more remorse for the predicament you were in and the predicament that it potentially puts your family in. I didn't hear remorse for [J.H.] or . . . for her injuries. I think you characterized it as you could have done better in the relationship. You're not here because of a bad relationship. You're here because you committed a crime. And she's the victim. And that's what I was hoping to hear remorse about.

Nothing in this explanation suggests that the court's "lack-of-remorse finding" was based on Miller's decision to proceed to trial. *State v. Knight*, 701 N.W.2d 83, 89 (Iowa 2005).

Second, the district court's sentencing decision was not just based on the nature of the offense and its impact on the victim, as Miller contends. *See State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002) (noting a sentencing court must consider a "host of factors" that include "the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform"); *see also* Iowa Code § 907.5. The court expressly stated that it examined "a number of factors," which it then elaborated for Miller:

> I'm considering your employment. You have a steady job. I considered and I'm taking into your account your family obligations. I'm taking into

account—I guess one of the most glaring things is your criminal history. It's—I guess I would characterize it as atrocious.

And I understand … from [your character witness] that you matured in the last five or six years. And I can appreciate that. But at the same time, if my math is right, you're 53 years old. So we're talking about somebody maturing in their mid-40s. And the fact that you haven't had a conviction prior to this for a while—I think it's around 10 years—you were still well into adulthood. And your record going before that, as I said, is atrocious. In terms of assaults, the harassments—all crimes with victims. And a number of them at least with female victims, as in this case.

And your record is such that it doesn't carry a lot of weight when I hear "Well, he hasn't been in trouble for 10 years." Because the fact of the matter is your record is so bad that the community can't even afford a new assault, a new victim, even if it's only every 10 years. All right? It's not enough to just do something once in a while. All right? This needs to stop. There needs to be no more victims. No more assaults.

Because the court properly balanced relevant factors in sentencing Miller, we find no abuse of discretion and affirm his sentence.

**AFFIRMED.**