# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2239

_____

United States of America

*Plaintiff - Appellee*

v.

Luis Olivares

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: May 19, 2016
Filed: December 9, 2016
[Published]

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Luis Olivares was convicted after trial of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851 (Count 1); possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2); being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 3); being a fugitive in possession of a

firearm in violation of 18 U.S.C. §§ 922(g)(2) and 924(a)(2) (Count 4); possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 851 (Count 5); and distribution of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851 (Count 9). Olivares appeals the district court's[1] denial of pretrial discovery motions, decisions concerning his competency, and the application of a sentencing enhancement pursuant to 21 U.S.C. § 851. We have jurisdiction pursuant to 28 U.S.C. § 1291 and, finding no error, we affirm.

## I. Background

In July 2010, law enforcement in Rapid City, South Dakota, received a tip that Luis Olivares was selling methamphetamine, cocaine, and marijuana in the area. They began an investigation, and initiated surveillance on Olivares' trailer. Law enforcement received information from a confidential informant on November 22, 2010, that Olivares was transporting a large quantity of methamphetamine from Denver, Colorado, to Rapid City. Officers attempted to stop Olivares' car on his way back to South Dakota, but Olivares refused to pull over, leading police on a high-speed chase, reaching up to 95 miles per hour in blizzard conditions. Olivares eventually crashed into a field near Rapid City. During the chase, someone tossed at least one package of methamphetamine out of the car window. By the time officers arrived at the scene, Olivares had fled on foot, but two others, including the confidential informant, were still in the car. Eventually, officers found Olivares hiding in a nearby field. Officers also searched the crashed car, finding one package of assorted glass pipes and plastic baggies, two packages of methamphetamine hidden in a speaker box, four cell phones, and three laptop computers. Another package of methamphetamine was found under a rock in the field where the crash occurred.

---

[1]The Honorable Jeffrey L. Viken, Chief Judge, United States District Court for the District of South Dakota.

In January 2011, the government filed a superseding indictment charging Olivares and 15 co-defendants with multiple firearm and drug-related offenses. In January 2012, upon motion of both parties, the district court ordered that Olivares undergo a psychiatric or psychological examination to be conducted pursuant to 18 U.S.C. §§ 4241(b) and 4247(b) for purposes of determining his competency to stand trial.

In April 2012, the district court received a report regarding Olivares from the Federal Detention Center in Englewood, Colorado. The court subsequently held a competency hearing where the parties stipulated to Olivares' mental incompetence and his need for further treatment. The district court accepted the stipulation and committed Olivares to a different facility to undergo a period of hospitalization and treatment not to exceed four months to determine whether there was a substantial probability his competency to stand trial could be restored pursuant to 18 U.S.C. § 4241(d).

In October 2012, the Federal Medical Center at Butner, North Carolina, issued a certificate of restoration of competency to stand trial for Olivares, with a corresponding report. On November 21, 2012, the parties stipulated to issues regarding the report, and both sides again agreed Olivares needed to be further evaluated. The district court accepted the stipulation and ordered Olivares to be committed and treated at a third facility. In July 2013, the medical staff at the Federal Medical Center at Devens, Massachusetts, issued a report which concluded that Olivares was not suffering from a major mental illness that would preclude him from understanding the nature and consequences of the proceedings against him or from assisting properly with his defense.

On September 20, 2013, Olivares' counsel moved that a local psychiatrist be allowed to evaluate Olivares' competency. The district court granted the motion, and

Olivares was examined by Dr. Stephen P. Manlove. Dr. Manlove prepared a report and provided it to the court on February 7, 2014. He concluded that Olivares was not suffering from a mental impairment, had a rational ability to consult with counsel, and had a factual and rational understanding of the proceedings. The district court held further competency hearings on February 27, and March 18, 2014. On May 30, 2014, it issued a comprehensive order concluding Olivares was competent to stand trial.

Throughout the course of his commitment and afterwards, Olivares filed numerous civil lawsuits in which he made a variety of allegations against the prosecutor in his case and numerous law enforcement officers. Olivares also tried to file hundreds of pro se handwritten motions, most of which were returned to his counsel as non-compliant and non-conforming motions that primarily dealt with issues unrelated to his case. Olivares' civil complaints were all dismissed and he was eventually barred from filing further civil lawsuits in federal court without prior permission.

On November 4, 2014, the government filed an information pursuant to 21 U.S.C. § 851 providing notice of its intent to seek an enhanced penalty of life imprisonment upon conviction based on Olivares' two "prior convictions for a felony drug offense." Olivares filed a formal objection to the notice, asserting substantive challenges to the use of the prior convictions under the statute. On May 27, 2015, the district court conducted a hearing on the matter and overruled Olivares' objections, concluding that Olivares' challenges were barred by the five-year statute of limitations and the convictions were thus valid for purposes of the enhancement.

Trial began on December 1, 2014. On the third day of the ten-day jury trial and outside the jury's presence, Olivares informed the district court that he wanted to proceed pro se. The court warned Olivares of the dangers of self-representation and advised him to allow counsel to continue to represent him. Olivares persisted in his decision to represent himself, but asked if he could have his attorney back should he

want that. The court appointed Olivares' counsel as standby counsel, who would be available to take over witness examination or legal argument at any time. The court told the jury of Olivares' decision and advised them that it "must not affect [their] consideration and decision whether or not he's guilty or not guilty of the offenses charged."

Trial continued, with Olivares conducting a portion of one cross-examination, a full cross-examination of the case agent, and a full direct examination. Defense counsel conducted the remainder of the witness examinations and gave the closing argument. The jury found Olivares guilty on all counts. On May 27, 2015, Olivares was sentenced to life imprisonment on Counts 1 and 5 to run concurrently to Counts 3, 4, and 9, for which he received ten years' imprisonment, each to run consecutively. On Count 2, Olivares was sentenced to five years' imprisonment consecutive to all other counts.

Olivares timely appeals.

## II. Discussion

Olivares raises three issues on appeal. First, he challenges several discovery orders entered by the district court as well as the government's failure to preserve certain electronic discovery. Second, Olivares argues the district court should have sua sponte reevaluated his competency to proceed to trial and to represent himself. Third, Olivares asserts the district court improperly applied the sentencing enhancement pursuant to 21 U.S.C. § 851. The court addresses these arguments in turn.

-5-

**A. Discovery**

Olivares argues that the district court erred in denying him access to discovery and the government improperly selectively preserved evidence by saving only inculpatory material.

First, Olivares challenges the protective order entered by the district court. On January 13, 2011, and again on October 7, 2011, due to a change of counsel, the district court ordered, pursuant to stipulations signed by the government and Olivares' defense attorneys, that "Defense counsel shall keep the [discovery] items furnished in his/her possession, and the materials shall not be given to the Defendant or anyone else without the Court's permission." This protective order, which is "standard" in criminal cases in the district, permitted Olivares to read the discovery materials "but only in the presence of defense counsel, the defense investigator or a defense expert."

Orders governing discovery are "committed to the sound discretion of the district court and an error in administering the discovery rules is reversible only on a showing that the error was prejudicial to the substantial rights of the defendant." United States v. Pelton, 578 F.2d 701, 707 (8th Cir. 1978). "Normally a party is bound by his stipulations as a stipulation . . . is akin to a contract." United States v. Morales, 684 F.3d 749, 755 (8th Cir. 2012) (alteration in original) (quoting Rathborne Land Co. v. Ascent Energy, Inc., 610 F.3d 249, 262 (5th Cir. 2010)). Olivares, through counsel, twice signed the stipulation which permitted him to review the discovery only in the presence of counsel or his agent. There is no showing that the stipulated agreement was compelled or involuntarily made, thus the district court did not abuse its discretion in issuing the protective order agreed to by the parties. See id. (upholding the stipulated discovery agreement where it "was freely entered and not compelled").

Second, Olivares contends that the court's refusal to permit him direct access to the 1,221 discovery files substantially prejudiced his ability to represent himself at trial, particularly given his limited access to a computer to assist his review of the materials.

At several points prior to and during trial, Olivares petitioned the district court for increased access to discovery materials to aid in preparation of his case for trial. On February 20, 2014, Olivares, through counsel, moved for access to the police reports provided to his counsel as part of the discovery in the case. The district court orally denied the motion, but its reasoning is not available in the record.[2] Again at the pretrial conference, Olivares' counsel discussed his concern that because Olivares was being held in solitary confinement, his access to his client was limited to a maximum of one hour and 15 minutes per day of visitation and no phone calls. Concerned about counsel's effective assistance in the week before trial, the district court confirmed with the U.S. Marshals that counsel would be able to freely meet with his client outside of the limited schedule. During trial, Olivares raised his concern about insufficient access to discovery materials, specifically to conduct Internet research. The district court granted Olivares permission to access the Internet through his counsel an hour prior to the start of trial the following day.

When Olivares elected to proceed at least in part pro se, he had "a right of access to adequate law libraries or adequate assistance from persons trained in the law." United States v. Kind, 194 F.3d 900, 905 (8th Cir. 1999) (quoting United States v. Knox, 950 F.2d 516, 519 (8th Cir. 1991)). To prove that he was deprived

---

[2]Notably, at the time Olivares asked to personally review the police reports, he was not appearing pro se. Once Olivares invoked his right to represent himself, neither Olivares nor his counsel moved to vacate the stipulated protective order. Thus, the district court had no opportunity to "consider the prejudice that imposition of the protective order had upon [Olivares] during trial as a pro se defendant." Appellant's Br. at 24.

of this right, Olivares "must 'demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim.'" Id. (alteration in original) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)). Olivares represented himself intermittently at trial—conducting a partial cross and direct examination of one witness, his ex-girlfriend Precious Bartlett, and the full cross examination of the case agent, Derek Hill—always with the substantial assistance of standby counsel. The district court several times at trial permitted Olivares additional time to confer with counsel and to organize evidence and exhibits, and allowed standby counsel to take over the questioning of Ms. Bartlett. The court further demanded that the jail provide counsel with unlimited access to his client in the week leading up to trial and made arrangements for Olivares to review Internet materials with standby counsel in the courtroom. It is clear the district court carefully protected Olivares' right to access adequate resources to prepare his own defense.

Finally, Olivares argues the government selectively preserved electronic discovery and failed to save exculpatory material, causing him unfair prejudice at trial. In discovery, the government produced several incriminating jail phone calls Olivares made to co-defendants. Olivares subsequently requested copies of all jail phone calls and visits involving Olivares and his co-defendants, and the government responded that it had not recorded or preserved such evidence. Olivares also requested all of the text messages exchanged between Agent Hill and his confidential informant from the night of Olivares' arrest. The government was unable to produce the text messages because it failed to download or save them. The government relied on Olivares' incriminating jail phone calls and Agent Hill's testimony regarding the content of the text messages at trial.

Olivares raised the government's failure to produce the jail phone calls and visits and the agent's text messages with the magistrate judge and with the district court. The district court denied Olivares' motion to compel, holding that "[t]he

government does not have a duty to disclose items it does not possess." (quoting United States v. Sarras, 575 F.3d 1191, 1215 (11th Cir. 2009)).

Given that the government's storage and retention systems by design do not preserve the requested items, Olivares here does not argue the district court erred in refusing to compel disclosure. Rather, he argues for the first time on appeal that his due process rights were violated due to law enforcement's bad faith failure to preserve potentially exculpatory evidence. See Arizona v. Youngblood, 488 U.S. 51, 58 (1988) ("failure to preserve potentially useful evidence does not constitute a denial of due process of law" unless the defendant can show law enforcement acted in bad faith). Even assuming that the deleted jail phone calls, jail visit videos, and agent text messages had apparent exculpatory value, see United States v. Webster, 625 F.3d 439, 446 (8th Cir. 2010), there is no evidence that the government acted in bad faith when it failed to preserve the evidence, see id. (no evidence of bad faith where "the normal procedure in destroying evidence was followed"); United States v. Houston, 548 F.3d 1151, 1155 (8th Cir. 2008) (bad faith was not shown where the arresting officer "did not attempt to download video of the traffic stop" as there was no evidence regarding the officer's obligation to preserve the video). We recognize Olivares' concern: The non-inculpatory jail phone calls and the agent's text messages may (or may not) have been relevant to his defense. With the simplicity and efficiency of modern electronic storage capacity, one could imagine a policy where inculpatory materials and potentially relevant materials created or made available in proximity to the inculpatory materials are easily saved for review. But Olivares' failure to raise this issue before the district court and to present any evidence of bad faith is dispositive to his Youngblood argument.

## B. Competency

Olivares asserts on appeal that once his trial started, the district court should have sua sponte reevaluated his competency to proceed. See 18 U.S.C. § 4241(a)

("At any time after the commencement of a prosecution for an offense and prior to the sentencing," the court shall grant a motion from either party "for a hearing to determine the mental competency of the defendant" or "shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may" be incompetent). Trial began on December 1, 2014. In an order dated May 30, 2014, the district court found Olivares was competent to proceed to trial—a finding Olivares does not challenge on appeal. At the competency hearing, the district court heard testimony from two psychologists and one psychiatrist, none of whom concluded that Olivares was mentally incompetent. Olivares asserts, however, that the doctors' opinions, and thus the district court's findings, were based on the premise that Olivares was feigning mental illness and that, once he was found competent to stand trial, he would in fact behave in a competent manner. But Olivares' behavior did not change following his competency determination or once trial began. Thus, Olivares contends, the very premise upon which the finding of competency was based was faulty, and the district court should have revisited the matter of competency to proceed.

Olivares misreads the district court's competency order, focusing on only a portion of its analysis. The district court did note that one doctor expressed the view that Olivares showed some signs of malingering and exaggeration, and that Olivares could effectively participate in his defense "if he chooses to do so." But neither doctor[3] "observed Olivares showing any symptoms consistent with mental illness." Both doctors concluded that Olivares "understood the nature and consequences of the proceedings against him," and that he had the ability to rationally assist in his own defense. See 18 U.S.C. § 4241(d) (court must determine whether defendant is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences

---

[3]Three doctors testified in person or by video, but the district court's order relies largely on the opinions expressed by only two of the doctors.

of the proceedings against him or to assist properly in his defense"). Nowhere does the district court conclude that its competency finding is based on the expectation that Olivares' behavior would change. Indeed, the district court acknowledged the doctors' observations of Olivares' paranoid beliefs, his alleged delusions, and his persistent inclination to make false accusations against others involved in his case. But the court concluded that despite these behaviors, Olivares was able to understand the nature and consequences of the proceedings against him, and to assist in his own defense. The district court also questioned Olivares at the competency hearing and found he understood the court's questions and had a "rational understanding of the proceedings and a general understanding of the legal process."

Moreover, one doctor's opinion that Olivares' behavior may change does not demonstrate that Olivares' competency had changed between the May 2014 competency finding and the December 2014 trial. See James v. Iowa, 100 F.3d 586, 589–90 (8th Cir. 1996) ("James's assertion, based on the psychiatrists' reports, that his mental state was subject to change does not demonstrate that his mental state had in fact changed between his first examination and his trial."). Although we recognize that a "defendant's competency is not static and may change over even a short period of time," United States v. Ghane, 593 F.3d 775, 779 (8th Cir. 2010), there was no evidence that Olivares' competency had changed during the eight-month period. In fact, Olivares insists that his behavior did not change between the time of the competency hearing and the time of trial, which suggests there was no change in his competency during that period. See Drope v. Missouri, 420 U.S. 162, 181 (1975) ("Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial."). With no discernible difference in Olivares' presentation, the district court had no reason to revisit the issue of competency, and did not abuse its discretion in not doing so.

Olivares also argues that the district court erred in allowing him to represent himself during portions of the trial, thus violating his Sixth Amendment right to counsel. The Sixth Amendment not only guarantees a criminal defendant the right to assistance of counsel but also the right to represent himself or herself. United States v. Benson, 686 F.3d 498, 503 (8th Cir. 2012). Before allowing a defendant to proceed pro se, a district court must ensure that the defendant's waiver of counsel is knowing and voluntary. United States v. Turner, 644 F.3d 713, 720–21 (8th Cir. 2011). Olivares argues the waiver of counsel colloquy conducted by the district court "was not sufficient given [his] past history of mental health issue[s]." Olivares does not identify anything lacking in the colloquy that would render his decision not knowing or voluntary. See Faretta v. California, 422 U.S. 806, 835 (1975) (holding that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" (quoting Adams v. U.S. ex rel. McCann, 317 U.S. 269, 279 (1942))). Instead, he reiterates his argument that his behavior at trial showed he was not feigning mental illness and, thus, he was not competent to represent himself.

"Before allowing a defendant to waive his right to counsel, a court must be satisfied that the defendant is competent to do so." United States v. Washington, 596 F.3d 926, 940 (8th Cir. 2010) (quoting United States v. Crawford, 487 F.3d 1101, 1105 (8th Cir. 2007)). The Supreme Court has made clear that "the standard for mental competence to represent one's self is higher than the standard of mental fitness to stand trial." Id. at 941 (describing Indiana v. Edwards, 554 U.S. 164, 171–78 (2008)). Olivares argues that the illogical and irrational statements, filings, and questions he made prior to and during his pro se representation should have alerted the district court that he was not competent to represent himself and another competency hearing was required. "Generally, a court need not sua sponte order an evaluation to determine a defendant's competence to waive counsel;" a hearing is "necessary only when a court has reason to doubt the defendant's competence." Id.

-12-

at 940 (quoting Crawford, 487 F.3d at 1105). "A district court's decision not to order a competency evaluation or hold a competency hearing is reviewed for abuse of discretion." United States v. Turner, 644 F.3d 713, 723 (8th Cir. 2011).

In this case, we find no abuse of discretion in the district court not ordering another competency evaluation or holding another competency hearing when Olivares sought to represent himself at trial. The district court observed Olivares over the course of four years, conducted a thorough evidentiary hearing where six witnesses—three of whom were medical professionals—testified, and had the benefit of multiple written reports regarding Olivares' mental health. The court also communicated directly with Olivares during the course of the trial, and observed firsthand his conduct in the courtroom. At the pretrial conference and at sentencing, the court reiterated its conclusion that Olivares was "presently competent," describing him as a "highly intelligent individual" who was "very skilled at manipulating" psychiatrists, the court, and jurors. Under these circumstances, we conclude that the district court did not violate Olivares' Sixth Amendment right to counsel by permitting him to proceed pro se at trial.

## C. Sentencing Enhancement

On November 4, 2014, the government filed an information pursuant to 21 U.S.C. § 851 providing notice of its intent to seek an enhanced penalty of life imprisonment upon conviction based on Olivares' two "prior convictions for a felony drug offense." See 21 U.S.C. §§ 841(b)(1)(A), 851(a)(1). The statute imposes a five-year statute of limitations for challenging any prior conviction that the government relies on for purposes of this enhancement. 21 U.S.C. § 851(e). The district court found that Olivares' two prior convictions became final in January 2006 and April 2006 respectively. Neither party contests this finding. Thus, under the statute, Olivares had until January and April 2011 to challenge the validity of those prior convictions. Olivares asserts that he was improperly denied the opportunity to do so.

-13-

Olivares was charged by criminal complaint on December 7, 2010. On December 21, 2010, he was indicted, and on January 19, 2011, the grand jury returned a superseding indictment. The government did not file the notice of intent to seek an enhanced penalty until November 4, 2014—almost four years after Olivares was originally indicted, and three and a half years after the § 851 statute of limitations had run. Had the notice been filed at the time of the indictment or the superseding indictment, Olivares points out, he would not have been time-barred from challenging the convictions. Olivares argues that the only reasonable explanation for the delay is that the government held off filing the notice until such time that he was no longer permitted, under the statute, to challenge the prior convictions. He also asserts that the statute of limitations should have been tolled during any period in which he was incompetent to proceed.

The district court concluded that under the plain language of the statute, the information was timely filed. See 21 U.S.C. § 851(a)(1) (to increase punishment by reason of one or more prior convictions, the United States attorney must file an information with the court "before trial"). As Olivares points out, the delay in filing the § 851 notice in his case was significant. However, pursuant to the plain language of the statute, the notice was timely filed. The information was filed November 4, 2014, and trial began on December 1, 2014. Without any evidence to support the allegation, we are unwilling to attribute bad faith to the government in its decision regarding when to file the notice.

For the first time on appeal, Olivares also asserts that he relied to his detriment on a representation from an Assistant U.S. Attorney assigned to the case that no § 851 notice would be filed. But there is nothing in the record to support this assertion. Even if such a representation had been made, Olivares makes no claim that the

representation was made before either January or April 2011, the deadlines for challenging the validity of the prior convictions.[4]

As to Olivares' concern that he had been incompetent during a portion of the five-year window for challenging the prior convictions, there is insufficient evidence to support such a finding. Olivares did not file a motion for a competency evaluation until January 4, 2012—eight months after the last deadline expired, and approximately one year after he was indicted. After extensive testing, multiple evaluations, and an evidentiary hearing, the district court determined he was competent to stand trial. To the extent Olivares argues that he was incompetent prior to January 4, 2012, he presented no evidence to support such a finding. We need not decide, therefore, whether the statute of limitations in § 851 could be tolled during a period of incompetency.[5]

### III. Conclusion

The judgment of the district court is affirmed.

---

[4]According to Olivares' brief, the purported conversation with the Assistant U.S. Attorney appears to have occurred on or after September 26, 2011, when the court granted Olivares' motion for new counsel and current counsel was appointed.

[5]For the first time on appeal, Olivares also argues that § 851 is impermissibly subject to discriminatory enforcement by the government, and thus is "void for vagueness." We decline to address this argument for the first time on appeal due to a lack of a record on the issue and briefing which is insufficiently developed. See United States v. Darden, 70 F.3d 1507, 1517 n.3 (8th Cir. 1995) (declining to address issues which "were mentioned in passing in the appellants' briefs"). We note, however, that we have previously concluded this statute of limitations does not violate due process or equal protection. See United States v. Prior, 107 F.3d 654, 661 (8th Cir. 1997) (five-year statute of limitations not a violation of due process or equal protection because "[f]ive years is a reasonable amount of time to require court documents to be preserved without the requirement becoming overly burdensome").