# IN THE SUPREME COURT OF IOWA

No. 16–0807

Filed June 23, 2017

Amended August 30, 2017

**STATE OF IOWA,**

    Appellee,

vs.

**ANDREW LEE RUSSELL,**

    Appellant.

---

Appeal from the Iowa District Court for Buena Vista County, Carl J. Petersen, Judge.

The defendant appeals a district court order granting the State's motion to regulate discovery that prevents the defendant from issuing ex parte investigatory subpoenas duces tecum. **AFFIRMED.**

Angela Campbell of Dickey & Campbell Law Firm, PLC, Des Moines, and John Sandy of Sandy Law Firm, P.C., Spirit Lake, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins and Andrew B. Prosser, Assistant Attorneys General, David Patton, County Attorney, and Ashley Bennett, Assistant County Attorney, for appellee.

Alan R. Ostergren, Muscatine, for amicus curiae Iowa County Attorneys Association.

**ZAGER, Justice.**

In this interlocutory appeal, Andrew Russell asserts the right to serve ex parte subpoenas duces tecum[1] upon third parties under the rules of criminal and civil procedure without providing notice to the State. Additionally, Russell asserts that denying him the right to issue ex parte subpoenas duces tecum denies him the constitutional rights to the effective assistance of counsel, compulsory process, and due process under the United States and Iowa Constitutions. The State filed a motion to regulate discovery that would prevent the defendant from issuing an investigatory subpoena duces tecum except in three circumstances: (1) by express agreement of the parties, (2) to a witness for a deposition with notice to all parties, or (3) to a witness for a trial or court hearing. After a hearing, the district court found there was no statutory or constitutional authority to support Russell's position that he had a right to issue ex parte subpoenas duces tecum. The district court also ordered counsel for the defendant to provide notice to the State before serving any subpoenas duces tecum on third parties. Russell sought interlocutory review and a stay, which we granted and retained. For the reasons stated below, we affirm the decision of the district court.

## I. Background Facts and Proceedings.

Because this case comes before us on a motion for interlocutory review on a discovery dispute, only the procedural history is relevant.

On December 4, 2015, the State charged defendant Andrew Russell with one count of child endangerment in violation of Iowa Code section 726.6A (2015). On March 15, 2016, the State filed a motion to

---

[1]A subpoena duces tecum is a "subpoena ordering the witness to appear in court and to bring specified documents, records, or things." *Subpoena Duces Tecum, Black's Law Dictionary* (10th ed. 2014).

regulate discovery and requested that the district court enter an order prohibiting Russell from issuing ex parte subpoenas duces tecum. In the motion, the State requested that the district court order defense counsel not to "serve or deliver any subpoena upon any person or entity" except in three situations: (1) the express agreement of the parties, (2) to a witness for a deposition with notice to all parties, or (3) to a witness for trial or hearing.

Russell resisted the motion and requested a hearing. At the hearing, Russell argued that under the Iowa rules of criminal and civil procedure, he had the right to issue subpoenas without the necessity of subpoenaing a witness to a hearing or trial, and without notice to the State. Russell further argued that granting the State's motion would violate his right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution; his right to compulsory process; and his due process rights under the United States Constitution and article I, section 9 of the Iowa Constitution.

The district court set the matter for hearing on April 11. After the hearing, the district court granted the State's motion and issued a protective order stating that Russell's counsel was

> prohibited from issuing any subpoena except to secure the attendance of a witness listed as a witness by the State at a deposition on notice to all parties pursuant to Iowa Rule of Criminal Procedure 2.13(1); to secure the attendance of a witness not listed by the State by order of the Court pursuant to Iowa Rule of Criminal Procedure 2.13(2); to secure the attendance of a witness at trial or other court proceedings pursuant to Iowa Rule of Criminal Procedure 2.13(2). The Defendant may also attach a request for documents, subpoena duces tecum, pursuant to Iowa Rule of Criminal Procedure 2.15(2), provided the subpoena also requests the witness's attendance in the above-prescribed manner.

The district court found that there was no authority to support Russell's position whether statutory, rule-based, or in caselaw. The district court noted that its decision did not prevent Russell from obtaining information to support an investigation, nor did it require him to show his hand prematurely. Russell applied for interlocutory review which we granted and retained.

## II. Standing.

Russell argues the State does not have standing to object because it is not "injuriously affected" by the issuance of a subpoena duces tecum to a third party as part of a defendant's investigation to build a defense. Because the third party possesses the records and not the State, the State is not injured by the subpoena. The State responds it does have standing to object because the third party's refusal to produce documents or the third party's deliverance of documents may impact the State's ability to bring the defendant to trial within the limits of speedy trial requirements.

Our general rule for a party to have standing to object is whether the party was "prejudiced by the claimed error." *Mundy v. Warren*, 268 N.W.2d 213, 218 (Iowa 1978). Other courts have described the test for standing to quash a subpoena. "A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). In such a situation, "[t]he prosecution's standing rest[s] upon its interest in preventing undue lengthening of the trial [and] undue harassment of its witness . . . ." *Id.*; *see also Schreibvogel v. State*, 228 P.3d 874, 880 (Wyo. 2010).

Other courts have decided whether the State has standing to challenge the issuance of subpoena duces tecum. The majority approach

for courts interpreting Federal Rule of Criminal Procedure 17(c)[2] or their own similar rules is to find the State does have standing. *See, e.g.,* *Commonwealth v. Lam,* 827 N.E.2d 209, 213 (Mass. 2005).

In *Lam,* the State objected to the defendant's issuance of subpoenas duces tecum and the defendant argued the State lacked standing. 827 N.E.2d at 213. The Supreme Judicial Court of Massachusetts noted it would follow the majority approach and found

> [t]he Commonwealth, charged with prosecuting the case, will often be able to assist a judge in determining whether a motion under rule 17(a)(2) involves an improper "fishing expedition." The Commonwealth, of course, also has an interest in preventing unnecessary harassment of a complainant and other Commonwealth witnesses caused by burdensome, frivolous, or otherwise improper discovery requests. A complainant or witness should be forced neither to retain counsel nor to appear before a court in order to challenge, on the basis of a partial view of the case, potentially impermissible examination of her personal effects and the records of her personal interactions.

*Id.* at 213–14 (citation omitted).

In *State v. DeCaro,* the Connecticut Supreme Court held the State had standing to move to quash a defendant's subpoena duces tecum. 745 A.2d 800, 816 (Conn. 2000). Although the subpoena duces tecum was served on a key witness, the court's reasoning for concluding the State had standing to object rested upon the State's "interest in preventing undue lengthening of the trial [and] undue harassment of its

---

[2]The rule provides,

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1).

witness." *Id.* at 816 (alteration in original) (quoting *Raineri*, 670 F.2d at 712).

In *People v. Spykstra*, the Colorado Supreme Court likewise held the State had standing to move to quash a third-party subpoena duces tecum. 234 P.3d 662, 666 (Colo. 2010). As the prosecuting party, the State has standing to object because it has an "interest in ensuring the propriety of the subpoenas," managing the case, and preventing "witness harassment through improper discovery requests." *Id.*

California has also recognized that the government generally has the right to file a motion to quash "so that evidentiary privileges are not sacrificed just because the subpoena recipient lacks sufficient self-interest to object." *Kling v. Super. Ct.*, 239 P.3d 670, 677 (Cal. 2010) (quoting *M.B. v. Super. Ct.*, 127 Cal. Rptr. 454, 461 (Ct. App. 2002)); *see* 2 Charles Alan Wright & Peter J. Henning, *Federal Practice and Procedure* § 275, at 262 (4th ed. 2009) (noting the rationale for requiring notice to the victim in Rule 17(c)(3) is that third parties "do not have the same incentive to challenge" a subpoena and a "victim may be unaware of the subpoena for his personal or confidential information").

While we acknowledge that a small minority of jurisdictions would find that the government has no standing to challenge the court's issuance of an ex parte subpoena duces tecum, we conclude the State clearly has a specific interest in the outcome of this litigation as the party prosecuting the criminal case. As the prosecuting party, the State's interest in the outcome of the case is separate and distinct from that of the general population. The State has an interest in managing the progression of the case, in preventing the lengthening of a trial when able, and in preventing undue witness pressure or harassment. The injury to the State is also concrete rather than hypothetical. The State

has the burden of bringing Russell to trial, and as such, has an interest in the documents produced. We find that the State has standing in this case.

### III. Standard of Review.

"We review questions of statutory interpretation for correction of errors at law." *State v. Dahl*, 874 N.W.2d 348, 351 (Iowa 2016). To the extent the violation of a constitutional right is alleged, our review is de novo. *Spitz v. Iowa Dist. Ct.*, 881 N.W.2d 456, 464 (Iowa 2016).

### IV. Analysis.

The district court granted the State's motion to regulate discovery. In its order, the district court ruled that if Russell wished to issue a subpoena duces tecum, he could do so for purposes of a deposition, hearing, or trial, but was also required to provide notice to the State. On appeal, Russell argues he has the right to issue an ex parte subpoena duces tecum under the rules of criminal and civil procedure. He further argues the district court order violates his right to the effective assistance of counsel, his right to compulsory process, and his right to due process under the United States and Iowa Constitutions.

A subpoena duces tecum is a "subpoena ordering the witness to appear in court and to bring specified documents, records, or things." *Subpoena Duces Tecum, Black's Law Dictionary*. Russell seeks to use a subpoena duces tecum to produce documents from a third party *only* to his defense counsel for purposes of investigation. He argues that he may do so without notice to the State and absent any concurrent deposition, hearing, or trial. The State argues that this would violate the rules of criminal and civil procedure and that there is no basis for it under Iowa statute or caselaw. The State also requests notice.

**A. Rules of Criminal and Civil Procedure.**

1. *Iowa Rules of Criminal Procedure.* Rule 2.15 outlines the process for securing subpoenas for witnesses and for the production of documents from witnesses. Iowa R. Crim. P. 2.15(1)–(2). It provides,

> **2.15(1)** *For witnesses.* A magistrate in a criminal action before the magistrate, and the clerk of court in any criminal action pending therein, shall issue blank subpoenas for witnesses, signed by the magistrate or clerk, with the seal of the court if by the clerk, and deliver as many of them as requested to the defendant or the defendant's attorney or the attorney for the state.

> **2.15(2)** *For production of documents—duces tecum.* A subpoena may contain a clause directing the witness to bring with the witness any book, writing, or other thing under the witness's control which the witness is bound by law to produce as evidence. The court on motion may dismiss or modify the subpoena if compliance would be unreasonable or oppressive.

*Id.*

The State also has the power to issue subpoenas and subpoenas duces tecum for witnesses prior to indictment. *See id.* r. 2.5(6). During its investigation into whether there is sufficient evidence that a crime occurred, the State has the authority to issue such subpoenas. *Id.* However, once a criminal charge is filed, the State must disclose to the defendant the witnesses that were subpoenaed. *Id.* Further, the defendant has the right to be present and to cross-examine any witnesses subpoenaed. *Id.* r. 2.14(1).

The rules also provide the procedure by which a defendant may depose and seek documents from witnesses. *Id.* r. 2.13. A defendant has the right to depose any witness the State lists on the indictment or trial information. *Id.* r. 2.13(1). Upon notice to the court and the opposing party, a witness who will be deposed may also be ordered to produce "any designated book, paper, document, record, recording, or

other material, not privileged" at the time and place of the deposition. *Id.* r. 2.13(2).

The rules provide detailed provisions regarding discovery and disclosure of documents during discovery. *Id.* r. 2.14. There are provisions regarding mandatory and discretionary disclosure of documents and evidence. *Id.* Discovery is subject to regulation by the district court, and the district court has the power to order that "discovery or inspection be denied, restricted or deferred." *Id.* r. 2.14(6)(*a*).

2. *Iowa Rules of Civil Procedure.* While our rules of civil procedure do not apply to criminal matters, they can still be instructive in this situation. *See State v. Halstead*, 791 N.W.2d 805, 813 (Iowa 2010). Russell argues that, with regard to ex parte subpoenas duces tecum, we should rely on the procedures outlined in the rules of civil procedure. However, it is important to highlight the significant differences between the rules.

The rules of civil procedure are lengthier and more detailed than the rules of criminal procedure with regard to the issuance of civil subpoenas. The rules of civil procedure provide for subpoenas duces tecum to persons, not just witnesses. Iowa R. Civ. P. 1.1701(4)(*b*). In contrast, the rules of criminal procedure are for securing subpoenas for *witnesses.* Iowa R. Crim. P. 2.15(1) ("A magistrate in a criminal action . . . shall issue blank subpoenas for *witnesses* . . . ." (Emphasis added.)); *id.* r. 2.15(2) ("A subpoena may contain a clause directing the *witness* to bring with the *witness* any book, writing, or other thing under the *witness's* control which the *witness* is bound by law to produce as evidence." (Emphasis added.)). Additionally, the rules of civil procedure specifically provide that those persons subpoenaed may be "commanded

to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises" without being required to attend a deposition, hearing, or trial. Iowa R. Civ. P. 1.701(4)(*b*)(1). No such language is contained in the rules of criminal procedure.

There are, however, also important similarities between the rules of civil procedure and the rules of criminal procedure. Significantly, the rules of civil procedure require notice to the opposing party. *Id.* r. 1.1701(3)(*a*). Like the rules of criminal procedure, the subpoena is subject to the discretion of the district court and the district court may quash or modify a subpoena if required. *Id.* r. 1.1701(4)(*d*)(1). Both the rules of criminal procedure and the rules of civil procedure refer to the issuance of subpoenas duces tecum as the command to *produce* documents. *Compare id.* r. 1.1701(1)(*d*) ("A command in a subpoena to *produce* documents, electronically stored information, or tangible things requires the responding party to permit inspection, copying, testing or sampling of the materials." (Emphasis added.)), *with* Iowa R. Crim. P. 2.15(2) ("A subpoena may contain a clause directing the witness to bring with the witness any book, writing, or other thing under the witness's control which the witness is bound by law to *produce as evidence*." (Emphasis added.)). The use of the term "produce" contemplates production not just to one party in secret, but to both parties.

Although Russell seeks to expand the use of subpoenas duces tecum by comparison to the more detailed terms contained in the rules of civil procedure, the rules of civil procedure still require notice and production. However, the rules of criminal procedure also provide that the court "may dismiss or modify the subpoena if compliance would be unreasonable or oppressive." Iowa R. Crim. P. 2.15(2). Absent any other

protocol, this is the proper procedure for Russell and other criminal defendants to utilize.

3. *Approach of other states and the federal courts.* The majority of courts that have considered whether subpoenas duces tecum may be issued ex parte have concluded that, absent some sort of protocol, ex parte issuance is improper. *See, e.g., State v. DiPrete*, 698 A.2d 223, 227 (R.I. 1997).

In *DiPrete,* the defendant issued an ex parte subpoena duces tecum pursuant to rule 17(c) of the Rhode Island Superior Court Rules of Criminal Procedure.[3] *Id.* at 223–24. The State filed a motion to compel the disclosure of the materials obtained through the pretrial subpoenas duces tecum, which the district court denied. *Id.* at 224. The Rhode Island Supreme Court ultimately concluded that three parts of the rule led to the conclusion "that litigation concerning issuance of and compliance with subpoenas duces tecum be conducted upon notice, and not in secret." *Id.* at 226–27 (quoting *United States v. Urlacher*, 136 F.R.D. 550, 555–56 (W.D.N.Y. 1991)). In order to ensure the rule would not be used as a discovery device, the court concluded that the "rule contemplates an adversarial process in which an opposing party is

---

[3]Rule 17(c) provides,

> A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

R.I. Super. R. Crim. P. 17(c). This rule is "essentially identical to the Federal rule." *DiPrete*, 698 A.2d at 224.

afforded notice and an opportunity to challenge a motion for issuance of a pretrial subpoena duces tecum." *Id.* at 227.

Rule 17 of the Colorado Rules of Criminal Procedure differs from the federal rule.[4] *People v. Baltazar*, 241 P.3d 941, 943 (Colo. 2010) (en banc). In pertinent part, it provides that "[t]he subpoenaing party shall forthwith provide a copy of the subpoena to opposing counsel (or directly to the defendant if unrepresented) upon issuance." Colo. R. Crim. P. 17(c). Because of this difference, the rule precludes the ex parte issuance of subpoenas duces tecum, even in the case of extraordinary circumstances. *Baltazar*, 241 P.3d at 943.

Even courts that allow the issuance of ex parte subpoenas duces tecum require some showing of exceptional or difficult circumstances. Perhaps the most liberal application of rule 17(c) of the Federal Rules of Criminal Procedure can be found in *United States v. Beckford*, 964 F. Supp. 1010, 1026 (E.D. Va. 1997). In *Beckford*, the court held that subpoenas duces tecum could not be issued ex parte absent exceptional circumstances. *Id.* The text of rule 17(c) of the Federal Rules of Criminal Procedure does not provide either party the right to an ex parte subpoena

---

[4]The rule provides,

> A subpoena may also command the person to whom it is directed to produce the books, papers, documents, photographs, or other objects designated therein. The subpoenaing party shall forthwith provide a copy of the subpoena to opposing counsel (or directly to the defendant if unrepresented) upon issuance. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents, photographs, or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents, photographs, or objects or portions thereof to be inspected by the parties and their attorneys.

Colo. R. Crim. P. 17(c).

duces tecum. *Id.* Therefore, the court found that the rule itself "suggests an adversarial process wherein the opposing party will be provided notice and an opportunity to challenge" the issuance of a subpoena duces tecum. *Id.* However, the court also held that the rule did not foreclose the use of an ex parte subpoena duces tecum in every situation. *Id.* Ex parte issuance is appropriate "in the rare instance in which a defendant would be required to disclose trial strategy, witness identities or attorney work-product to the Government in his [or her] pre-issuance application." *Id.* at 1027. Examples of these rare instances include when the defendant seeks records of his or her own mental or physical health when such is at issue in the case, when the defendant seeks information about his or her own military service, or when requested documents are obviously linked to a specific theory of defense. *Id.* at 1030. Ordinarily, however, ex parte issuance of subpoenas duces tecum "will be unnecessary and thus inappropriate." *Id.*

In contrast, other federal courts have placed more limitations upon the issuance of ex parte subpoenas duces tecum. *See, e.g., United States v. Finn*, 919 F. Supp. 1305, 1329 (D. Minn. 1995). These courts have followed a test formulated in *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952) that applies more broadly to the production of any documents prior to trial. *Finn*, 919 F. Supp. at 1329.

> Under this test, in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Id.* (quoting *United States v. Nixon,* 418 U.S. 683, 699–700, 94 S. Ct. 3090, 3103 (1974)). Accordingly, to meet this burden, the defendant must be able to demonstrate that an ex parte subpoena duces tecum is relevant, admissible, and specific. *Id.*

In *Finn,* the defendant sought to issue an ex parte subpoena duces tecum without notice to the government. *Id.* at 1330. While the court did not go so far as to hold that every subpoena duces tecum requires disclosure to the opposing party, it did hold that the defendant's motion to issue an ex parte subpoena duces tecum, without a particularized showing to the court and without notice to the government, should be denied. *Id.*

Still other federal courts have gone one step further and found that the ex parte issuance of subpoenas duces tecum under Rule 17(c) is never permitted. *See, e.g., United States v. Hart,* 826 F. Supp. 380, 382 (D. Colo. 1993); *Urlacher,* 136 F.R.D. at 555–56. These courts have found that the plain language of Rule 17(c) "negates any assumption that production should be on an *ex parte* basis." *Hart,* 826 F. Supp. at 382. Because the text of the rule states that "the court may permit the parties and their attorneys to inspect all or part of" the documents subpoenaed, these courts have held that there can be no right to the ex parte procurement of subpoenaed documents. Fed. R. Crim. P. 17(c)(1); *see also Hart,* 826 F. Supp. at 382.

In *Commonwealth v. Mitchell,* the court cited to *Beckford* but tempered its findings with its own state rules. 831 N.E.2d 890, 898 (Mass. 2005). The court began by noting that the purpose of its rule of criminal procedure is to expedite trial and avoid delays. *Id.* at 897–98. If a party seeks to file an ex parte subpoena, the party first needs to file a motion with the court explaining in detail why it is necessary for it to

proceed ex parte. *Id.* at 898. The court should only issue an ex parte subpoena duces tecum when the defendant has demonstrated (1) a reasonable likelihood the prosecution would receive incriminating evidence it would otherwise not be entitled to receive or (2) a reasonable likelihood that giving notice to a third party would result in the destruction or alteration of the documents. *Id.* The court also noted that a defendant may not make an ex parte motion solely on the basis that notice to the State would reveal trial strategy, work product, or client confidences. *Id.* Allowing these bases for the ex parte issuance of a subpoena duces tecum "would create a loophole that could not be contained, because matters of trial strategy, work product, and client communications are involved in almost every case where a rule 17(a)(2)[5] motion might be filed." *Id.*

4. *Application.* Nothing in the Iowa Rules of Criminal Procedure or in the Iowa Rules of Civil Procedure allows a defendant in a criminal case to issue an ex parte subpoena duces tecum to a witness or party without notice to opposing counsel and oversight by the district court. In this case, Russell seeks the authority to obtain evidence, irrespective of the circumstances, without notice to the State and without any involvement

---

[5]Rule 17(a)(2) provides,

> A summons may also command the person to whom it is directed to produce the books, papers, documents, or other objects designated therein. The court on motion may quash or modify the summons if compliance would be unreasonable or oppressive or if the summons is being used to subvert the provisions of Rule 14. The court may direct that books, papers, documents, or objects designated in the summons be produced before the court within a reasonable time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents, objects, or portions thereof to be inspected and copied by the parties and their attorneys if authorized by law.

Mass. R. Crim. P. 17(a)(2).

of the district court. Russell argues he should not be required to make any showing of exceptional circumstances. Indeed, in this case, there is not yet any ex parte subpoena duces tecum to quash. The State filed the motion to regulate discovery and prevent ex parte subpoenas duces tecum before any motion by the defendant. There is nothing in the record to demonstrate what evidence Russell may seek through the issuance of such a subpoena, nor is there any showing that the evidence sought would actually raise to the level of an exceptional circumstance. Likewise, the State has been unable to demonstrate whether any information Russell would seek through an ex parte subpoena duces tecum would impact its ability to bring Russell to trial under speedy trial restraints or whether it would constitute a fishing expedition, harassment of a witness, or some other improper form of discovery.

We conclude that there is no authority, either in a statutory provision or our rules of procedure that would allow Russell to issue an ex parte subpoena duces tecum to a third party without notice to the State. While impliedly conceding that no such authority exists, Russell alternatively requests that we fashion a protocol for "ex parte subpoenas to be filed under seal so as to not . . . reveal his trial strategy." *See* Iowa Const. art. V, § 4; *Dahl,* 874 N.W.2d at 353 (permitting defense counsel in certain circumstances to make an ex parte submission to the court to justify an application for public funds to retain a private investigator). We decline to do so.

While Russell advocates for us to adopt a protocol, he does not present a specific protocol for our consideration in cases involving ex parte subpoenas duces tecum. We recognize that there are a number of different protocols adopted by other courts. Some courts, utilizing their own rules of criminal procedure, have concluded that subpoenas duces

tecum may never be issued ex parte. *See, e.g.*, *DiPrete*, 698 A.2d at 227; *Baltazar*, 241 P.3d at 943. Others allow the issuance of ex parte subpoenas duces tecum on a sliding scale of exceptional circumstances. The most liberal standard is that found in *Beckford*, which allows a defendant to issue ex parte subpoenas duces tecum "in the rare instance in which a defendant would be required to disclose trial strategy, witness identities or attorney work-product to the Government in his [or her] pre-issuance application." *Beckford*, 964 F. Supp. at 1027. Other federal courts have tempered the *Beckford* test with more stringent exceptional-circumstances rules, such as those found in *Finn*, 919 F. Supp. at 1329–30. One of the most stringent exceptional-circumstances tests requires the defendant to demonstrate a reasonable likelihood the prosecutor would receive incriminating evidence or that the third party would destroy or alter the requested documents before allowing the issuance of an ex parte subpoena duces tecum. *Mitchell*, 831 N.E.2d at 898. This test was adopted to preclude the creation of a "loophole" that would allow all defendants to claim that trial strategy, work product, or client communication were at risk. *Id.*

We do not foreclose the possibility that there may be exceptional circumstances which warrant the issuance of an ex parte subpoena duces tecum. However, there seems to be an emerging trend whereby the State immediately and routinely files a pleading to regulate discovery even though, as here, no such request has been made by defense counsel. Having determined that defense counsel has no authority, either in a statutory provision or our rules of procedure, to unilaterally issue an ex parte subpoena duces tecum, such preemptory filings are clearly unnecessary. If defense counsel feels an ex parte subpoena duces

tecum is necessary, counsel should file a motion with the district court setting forth the basis for the request.

**B.  Effective Assistance of Counsel.**  Russell argues that denying him the ability to utilize an ex parte subpoena duces tecum for a third party violates his right to effective assistance of counsel.

Criminal defendants are entitled to effective counsel under both the United States Constitution and the Iowa Constitution.  U.S. Const. amend. VI; Iowa Const. art. I, § 10.  The test to determine whether counsel was ineffective is two-pronged.  *Nguyen v. State*, 878 N.W.2d 744, 752 (Iowa 2016); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  First, "[w]e ask if trial counsel breached an essential duty."  *Nguyen*, 878 N.W.2d at 752.  Second, we "ask whether prejudice resulted from [the] breach" of that duty.  *Id.*  The defendant has the burden of demonstrating he or she received ineffective assistance of counsel by a preponderance of the evidence.  *Id.*  Both prongs must be met in order to find counsel was ineffective.  *Id.*  As such, if one prong is not met, the other need not be addressed.  *Id.*[6]

To establish the first prong of the test, the defendant must be able to demonstrate that counsel performed "below the standard demanded of

---

[6]Although Russell raised both the Iowa Constitution and the United States Constitution, he did not offer an argument for why we should depart from established precedent under the United States Constitution in interpreting our own constitution. Therefore, we treat the claims under both constitutions as a single claim. *See, e.g.*, *King v. State*, 797 N.W.2d 565, 571 (Iowa 2011).

> When there are parallel constitutional provisions in the federal and state constitutions and a party does not indicate the specific constitutional basis, we regard both federal and state constitutional claims as preserved, but consider the substantive standards under the Iowa Constitution to be the same as those developed by the United States Supreme Court under the Federal Constitution.

*Id.*

a reasonably competent attorney." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). This is measured against "prevailing professional norms." *Id.* (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065). Because of this, "we begin with the presumption that [an] attorney performed competently." *Id.* We evaluate a claim of ineffective assistance of counsel based on the totality of the circumstances. *Id.*

A claim for ineffective assistance of counsel can arise at any stage of a case and can center on a defense attorney's failure to adequately investigate. *Id.* To provide effective assistance of counsel during the investigatory stage, counsel is required to conduct a reasonable investigation and to make reasonable decisions regarding discovery. *Id.* at 145; *see also Baltazar*, 241 P.3d at 944 ("[T]he Sixth Amendment right to the effective assistance of counsel includes an entitlement to no more than a thorough investigation, limited by reasonable professional judgments."). Under the reasonableness prong, we are more likely to find the defendant has established counsel was ineffective if the alleged actions or inactions are attributed to counsel's lack of diligence rather than counsel's exercise of judgment. *Ledezma*, 626 N.W.2d at 142.

The question we must address, then, is whether providing notice to the State for a subpoena duces tecum to a third party prevents defense counsel from conducting a reasonable pretrial investigation. We do not believe it does. Counsel would not breach an essential duty by providing notice, nor would notice fall "below the standard demanded of a reasonably competent attorney." *Id.*

Under our current rules of criminal procedure, subpoenas duces tecum are subject to the discretion of the trial court and may be dismissed or modified "if compliance would be unreasonable or oppressive." Iowa R. Crim. P. 2.15(2). Even in jurisdictions where

defense counsel may serve ex parte subpoenas duces tecum, counsel is still required to demonstrate hardship or concern for disclosure of trial strategy. *See, e.g., Finn*, 919 F. Supp. at 1329.

Defense counsel certainly has a duty to conduct a reasonable pretrial investigation, which may extend to the duty to subpoena certain records and documents. This duty, however, does not extend to seeking the ex parte issuance of subpoenas duces tecum without notice to the State, absent any showing of exceptional circumstances. Counsel's hands are not tied from seeking information or conducting a reasonable investigation. Counsel still has the option to seek leave from the court to demonstrate that offering notice to the State "would be unreasonable or oppressive." *See* Iowa R. Crim. P. 2.15(2). Defense counsel is not precluded from seeking pertinent information to build a defense even when, as here, we decline to adopt a specific rule finding that ex parte subpoenas duces tecum are appropriate in *every* case. Rather, any such rule would require notice, court involvement, and a burden of proof on the defendant. Requiring defense counsel to provide notice to the State before the issuance of a subpoena duces tecum to a third party, without a showing of hardship, exceptional circumstances, or impact upon trial strategy, and without court involvement does not mean a defendant was deprived of effective assistance of counsel. Defense counsel providing notice to the State for the investigation of third-party documents is reasonable under the circumstances and does not deprive a defendant of effective assistance of counsel.

**C. Compulsory Process.** The United States Constitution recognizes that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Likewise, the Iowa Constitution

recognizes the right "to have compulsory process for his witnesses." Iowa Const. art. I, § 10.

The right to compulsory process includes the right to compel a witness's presence in the courtroom and the right to offer testimony of witnesses. *State v. Weaver,* 608 N.W.2d 797, 802 (Iowa 2000). The Supreme Court has described the right to compulsory process as follows:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Taylor v. Illinois,* 484 U.S. 400, 409, 108 S. Ct. 646, 653 (1988) (quoting *Washington v. Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967)).

However, the Supreme Court has "never squarely held that the Compulsory Process Clause guarantees the right to discover[y]." *Pennsylvania v. Ritchie,* 480 U.S. 39, 56, 107 S. Ct. 989, 1000–01 (1987); *see also Weaver,* 608 N.W.2d at 802. Instead, the right to compulsory process is more appropriately described as a trial right and not a "constitutionally compelled rule of pre-trial discovery." *Baltazar,* 241 P.3d at 944; *see also Washington,* 388 U.S. at 19, 87 S. Ct. at 1923 (stating that the right to compulsory process is "the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's *to the jury* so it may decide where the truth lies" (emphasis added)); *State v. Schaefer,* 746 N.W.2d 457, 475 (Wis. 2008) ("The Compulsory Process Clause naturally suggests some constitutional entitlement to *trial evidence.*" (quoting 5 Wayne R. LaFave, et al., *Criminal Procedure* § 24.3(a), at 469 (2d ed. 1999) (emphasis added))). Similarly,

we have found that the right to compulsory process under article I, section 10 of the Iowa Constitution "make[s] sense only in the context of a formal legal proceeding leading to a trial." *State v. Senn*, 882 N.W.2d 1, 8–9 (Iowa 2016).

The leading Supreme Court case on the issue of subpoenas is *Ritchie*, 480 U.S. 39, 107 S. Ct. 989. In *Ritchie*, the defendant sought to subpoena confidential records from the Children and Youth Services of Pennsylvania. *Id.* at 43, 107 S. Ct. at 994. While analyzing the application of the Compulsory Process Clause, the Court acknowledged that it "has had little occasion to discuss the contours" of the Clause. *Id.* at 55, 107 S. Ct. at 1000. It noted that the

> cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt.

*Id.* at 55–56, 107 S. Ct. at 1000. The Court declined, however, to decide the case under the Compulsory Process Clause. *Id.* at 56, 107 S. Ct. at 1001. The Court "conclude[d] that compulsory process provides no *greater* protections . . . than those afforded by due process" and therefore analyzed the facts of the case under due process. *Id.*

Because of this, the Supreme Court ordinarily evaluates compulsory process issues under the broader scope of the Due Process Clause, as have we. *Weaver*, 608 N.W.2d at 802. Since Russell also raises a due process challenge, we choose not to resolve his claim under the compulsory process provision and instead analyze it under the broader scope of the Due Process Clause. *See id.*

**D. Due Process.** The right to present a defense is a fundamental right that is essential to a fair trial. *State v. Clark*, 814 N.W.2d 551, 561

(Iowa 2012). The United States Constitution and the Iowa Constitution protect a criminal defendant's right to substantive and procedural due process. U.S. Const. amends. V, XIV; Iowa Const. art. I, § 9.[7] The Due Process Clauses include two separate but related concepts—substantive due process and procedural due process. *State v. Seering*, 701 N.W.2d 655, 662 (Iowa 2005). Substantive due process "prevents the government from interfering with 'rights implicit in the concept of ordered liberty' " while procedural due process "act[s] as a constraint on government action that infringes upon an individual's liberty interest, such as the freedom from physical restraint." *Id.* (quoting *State v. Hernandez-Lopez*, 639 N.W.2d 226, 237, 240 (Iowa 2002)).

Substantive due process claims have two stages of inquiry. *Id.* First, we must determine the "nature of the individual right involved." *Hernandez-Lopez*, 639 N.W.2d at 238. If the right implicated is fundamental, we apply strict scrutiny. *Id.* Strict scrutiny analysis requires us to determine "whether the government action infringing the fundamental right is narrowly tailored to serve a compelling government interest." *Id.* If the right implicated is not fundamental, we only apply rational basis review. *Id.* Rational basis analysis requires us to determine whether there is "a reasonable fit between the government interest and the means utilized to advance that interest." *Id.*

The first step in a procedural due process analysis is to determine "whether a protected liberty or property interest is involved." *Seering*, 701 N.W.2d at 665 (quoting *Bowers v. Polk Cty. Bd. of Supervisors*, 638

---

[7]Russell also did not present an argument for why we should depart from established precedent in our interpretation of the Iowa Constitution's due process clause. We therefore treat both claims as the same. *See, e.g., King*, 797 N.W.2d at 571.

N.W.2d 682, 691 (Iowa 2002)). If we find such a protected interest is involved, we balance three factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail."

*Bowers*, 638 N.W.2d at 691 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976)).

In a criminal proceeding, a defendant has no general due process right to discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977).

> There is no general constitutional right to discovery in a criminal case, and *Brady* [*v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194 (1963)] did not create one; as the Court wrote recently, "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . ."

*Id.* We likewise recognized in 2000 that a criminal defendant does not have a due process right to pretrial discovery, which we have continued to uphold. *Clark*, 814 N.W.2d at 561; *Jones v. Iowa Dist. Ct.*, 620 N.W.2d 242, 243 (Iowa 2000); *Weaver*, 608 N.W.2d at 803.

Pretrial discovery in criminal cases is generally controlled by either statute or court rule unless otherwise grounded in the constitution.[8] *State v. Tuttle*, 472 N.W.2d 712, 717 (Neb. 1991); *see also United States v. Olivares*, 843 F.3d 752, 757 (8th Cir. 2016) ("Orders governing

---

[8]For example, the government is required to turn over any statement made by a witness that relates to his or her testimony under the Jenks Act and to produce all exculpatory evidence under *Brady*. *See United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013).

discovery are 'committed to the sound discretion of the district court and an error in administering the discovery rules is reversible only on a showing that the error was prejudicial to the substantial rights of the defendant.' " (quoting *United States v. Pelton*, 578 F.2d 701, 707 (8th Cir. 1978)). Federal Rule of Evidence 16 is therefore the "primary means of discovery in criminal cases." *United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013).

Further, at least one court has gone so far as to find that the ex parte issuance of third-party subpoenas duces tecum violates due process to the extent it deprives the State of notice and participation. *See, e.g.*, *Kling*, 239 P.3d at 677 ("[D]isclosure of the identity of the subpoenaed party and the nature of the records sought may, in many circumstances, effectuate the People's right to due process under the California Constitution."). The California Supreme Court found that there are a number of reasons the State has an interest in notice and participation involving a subpoena duces tecum—the third party may refuse to produce documents, ex parte proceedings may result in delays that interfere with the right to a speedy trial, and the State may have the right to file a motion to quash the subpoena. *Id.* Because of these affected rights, the court held that "[i]t is difficult to see how the People can have a meaningful opportunity to be heard if they are categorically barred from learning the identity of the subpoenaed party or the nature of the documents requested." *Id.*

We cannot conclude that Russell has demonstrated that substantive due process requires the ability to issue ex parte subpoenas duces tecum or that there would be a violation of his procedural due process rights utilizing the current mechanism for resolving discovery disputes involving subpoenas. *See* Iowa R. Crim. P. 2.15. We find that

Russell was not deprived of any due process right by his inability to issue an ex parte subpoena duces tecum on a third party.

## V.  Conclusion.

We do not foreclose the possibility that exceptional circumstances may exist for the district court to allow for the issuance of an ex parte subpoena duces tecum.  However, we find the proper procedure for Russell to utilize if he seeks to issue an ex parte subpoena duces tecum is to file a motion setting forth the basis for the request.  We also find there is no corresponding constitutional violation under the United States or Iowa Constitutions.  We affirm the district court grant of the motion to regulate discovery.

**AFFIRMED.**