# IN THE COURT OF APPEALS OF IOWA

No. 20-0011
Filed November 23, 2021

**DAVID PAUL DOUGLASS,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin,

Judge.


    Applicant appeals the denial of his postconviction relief application.

**AFFIRMED.**



    Nicholas Einwalter, Des Moines, for appellant.

    Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant

Attorney General, for appellee State.



    Considered by Tabor, P.J., and Greer and Badding, JJ.

**GREER, Judge.**

After being convicted of assault with intent to commit sexual abuse[1] and pleading guilty to the charge of lascivious acts with a child,[2] David Douglass challenges the denial of his application for postconviction relief (PCR).[3]  Drilling down, he posits his trial counsel made several errors that "went to the heart of his case" in his jury trial involving the assault with intent to commit sexual abuse.  Most of his complaints relate to issues about an exhibit containing phone data and his counsel's failure to obtain other phone data and consider and develop Douglass's defense strategy to confront an eyewitness.  Under these theories, Douglass challenges his conviction for assault with intent to commit sexual abuse.[4]  We affirm the denial of his PCR application.

**Standard of Review.**

"We normally review postconviction proceedings for errors at law."  *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011).  If the PCR applicant raises a

---

[1] After his jury trial, David Douglass appealed directly from his criminal conviction and alleged ineffective assistance of counsel over his trial counsel's strategy of allowing an eyewitness identification of him from a police photo lineup.  *See State v. Douglass,* No. 16-2221, 2018 WL 1865106, at *2–3 (Iowa Ct. App. Apr. 18, 2018) (setting out detailed factual findings).  Douglass unsuccessfully asserted his trial counsel breached an essential duty by allowing a photo-array identification process that identified him as a suspect; he also advocated for a new approach to conduct the identification of suspects.  *Id.*

[2] The State at first charged Douglass with burglary in the second degree and sexual abuse in the third degree.  The jury found Douglass guilty of the lesser included charge of assault with intent to commit sexual abuse.  Because later Douglass pled guilty in another case to lascivious acts with a child, the district court sentenced Douglass to ten years in prison, which ran consecutive to his jury conviction for a total term of incarceration not to exceed fourteen years.

[3] Douglass authored a pro se application for PCR and filed it November 30, 2018.

[4] In the PCR trial, Douglass also addressed his guilty plea in the other case, but he makes only passing reference to those ineffective-assistance-of-counsel arguments in this appeal.  So we do not consider them.

constitutional claim involving ineffective assistance of counsel, our review is de novo. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

**Analysis.**

To prevail, Douglass must show (1) counsel breached an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove prejudice, Douglass "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* To make this determination, we consider the evidence as a whole, including the extent of the effect of counsel's purported error on the overall trial. *State v. Graves*, 668 N.W.2d 860, 882–83 (Iowa 2003). Finally, we presume the performance of trial counsel falls within a range of professional assistance. *State v. Harris*, 891 N.W.2d 182, 186 (Iowa 2017). Douglass has the burden to prove otherwise by a preponderance of the evidence. *See State v. Ondayog,* 722 N.W.2d 778, 784 (Iowa 2006).

With a passionate appeal, Douglass urges his counsel's failures went to the "heart" of his case and were matters of "utmost importance." The State contends Douglass failed to prove either *Strickland* prong. We peel back the developed theories to see if there is any merit to Douglass's claims.

*The text messages and other phone data.*

First, Douglass contends trial counsel should have objected to the admission of an exhibit at trial that showed a redacted text message exchange. At the trial, the victim verified that the exhibit shows that she and Douglass exchanged texts about his assault on her and that Douglass apologized. True, the exhibit contained no identifying information about who sent the text message or who was

receiving the text message. Complaining that the exhibit failed to tie him to the text message exchange, Douglass told the PCR court: "I do not know what the text messages said. I know that it gives her saying that I was there and *mine saying I'm sorry or something*." (Emphasis added.) When asked about what part of the covered message would have helped his case, Douglass answered "I have no idea." Put simply, Douglass maintains that the exhibit should have been "thrown out."

But trial counsel did object to the exhibit—both in a pretrial hearing and at trial—and the district court overruled the objections.[5] Based on this record, we do not see how trial counsel's conduct is unreasonable under the circumstances. Because we examine claims of ineffective assistance of counsel in light of the totality of the circumstances, Douglass failed to prove his counsel's breach of duty as it relates to the text message exhibit. *See Ledezma*, 626 N.W.2d at 142.

At the same time, Douglass complains that his request to gather data from his own phone to use at trial was ignored by his trial counsel. He characterizes that failure as ineffective assistance of counsel. Still, other than pointing to the lack of response to his request, Douglass neglected to explain how any data from his phone would have enhanced his defense. Moreover, trial counsel testified Douglass never disputed that he was the person who sent the text message, so requesting Douglass's phone data likely would have bolstered the State's case. With no showing of how any of the phone data would have benefitted his defense,

---

[5] In the hearing on the redacted portion of the text message, in the presence of Douglass, the State confirmed the redacted portion contained information about a previous, unrelated sexual abuse act against the victim. Douglass asked the court to include all of the content of the message but the request was overruled.

Douglass fails to meet his burden to prove counsel was ineffective. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (finding that applicant did not identify what the investigation would have revealed or how anything discovered would have affected the outcome, thus his complaints about the adequacy of counsel's representation were not shown). "[I]t is not enough to simply claim that counsel should have done a better job." *Id.* Such is the case here, and we find Douglass did not establish his counsel was ineffective for failing to request his phone data.

*The eyewitness in the backyard strategy.*

According to Douglass, he formulated a successful strategy for trial, which was ignored by his trial counsel. He presumes that presenting a picture to the jury of the "six-foot privacy fence" at the back of the house where the assault had occurred would have shown them that the "five-foot" eyewitness lied about identifying Douglass entering the house. Douglass explained the theory to the PCR court.

> Q. Were there some issues about that backyard that you thought would be helpful in your defense? A. Yes.
> Q. Could you let the Court know what concerns you had about that backyard area? A. My concern was the—his original statement was he saw the back of my head for three to five seconds over a 6-foot wooden privacy fence between the neighbor's house and the house that I was allegedly at, and, I mean, I don't see how that was a possibility. I mean, the guy's 5-foot tall. So, I mean—and to get a good facial description of my face from the back, three to five seconds was kind of odd how he did that.
> Q. So based on those concerns, did you feel those were reasons why you might have wanted to depose [the eyewitness]? A. Yes.
> Q. And in terms of investigation, did you want somebody to go and check out or photograph this backyard? A. Yes.
> Q. And what would have been the use of that? What would you have done with that information? A. To show that you cannot see the front of somebody's face over a 6-foot privacy fence from the

garage to the back door of the house.  You can't get—I mean, you just can't see somebody's face from the front to the back.

But Douglass admitted at the PCR trial that his trial counsel found problems with this defense strategy.

> Q. You were present when we deposed [trial counsel] about a month or two ago; is that right?  A. Yes.
> Q. And so you heard the testimony that he gave; correct? A. Yes.
> Q. And that he testified that he has an investigator that works for his office; right?  A. Yes.
> Q. And that he asked that investigator to go out to this crime scene and take photographs of the privacy fence; right?  A. That is what he said.
> Q. That's what you wanted him to do; right?  A. Yes.
> . . . .
> Q. Would you agree with me that [trial counsel] said that the evidence that he found was not helpful to you?  Do you recall him saying that?  A. Yes, I would agree that he said that, yes.

And in fact in the deposition of trial counsel submitted to the PCR court, trial counsel said:

> Well, because the pictures showed that the privacy fence was not as tall as what was presented to us initially and that was Mr. Douglass's representation to us that the—I think it was [the eyewitness], would not have been able to see him at the back door because the privacy fence would have prevented it.
> The picture showed otherwise.  There was a privacy fence, but it was not tall to the extent that it would cover the back door.  So I determined the photographs would not be helpful.

A defense trial strategy that conflicts with the facts can be worse than no strategy at all when a jury must assess the credibility of both a defendant and trial counsel. Thus, trial counsel's failure to pursue a losing strategy does not equate to improvident trial strategy.  *See Harris*, 891 N.W.2d at 186 ("Trial counsel is not ineffective in failing to urge an issue that has no merit.").

Under this theory, Douglass failed to show trial counsel functioned outside the normal range of competency. *See Ondayog,* 722 N.W.2d at 785 ("[A] defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'") (citations omitted).

**Conclusion.**

Under the record presented here, Douglass's trial counsel performed within the standard of a reasonably competent attorney. And because Douglass failed to show his trial counsel performed deficiently, we need not reach the prejudice prong;[6] so we affirm the denial of the PCR application without further consideration. *See State v. Russell*, 897 N.W.2d 717, 730 (Iowa 2017) ("[I]f one prong is not met, the other need not be addressed.").

**AFFIRMED.**

---

[6] Given the strong evidence against Douglass, including direct testimony from the victim of the assault, it is unlikely a different result would have been possible. *See Ledezma*, 626 N.W.2d at 143–44 ("To satisfy this requirement, an applicant must meet 'the burden of showing that the decision reached would reasonably likely have been different absent the errors.'" (citation omitted)).